```
            IN THE UNITED STATES DISTRICT COURT
               WESTERN DISTRICT OF TENNESSEE
                      WESTERN DIVISION
```

|                                          |   |                          |
|------------------------------------------|---|--------------------------|
| **ANGELA L. JOHNSON,**                   | ) |                          |
|                                          | ) |                          |
|     **Plaintiff,**   | ) |                          |
|                                          | ) |                          |
| v.                                       | ) | No. 2:18-cv-02509-SHM-cgc |
|                                          | ) |                          |
| **BAPTIST MEMORIAL HEALTH CARE**         | ) |                          |
| **CORPORATION and BAPTIST**              | ) |                          |
| **MEMORIAL MEDICAL GROUP, INC.,**        | ) |                          |
|                                          | ) |                          |
|     **Defendants.**  | ) |                          |
|                                          | ) |                          |

**ORDER**

This is an employment discrimination and retaliation case. Before the Court are two motions. The first motion is Defendant Baptist Memorial Health Care Corporation's ("BMHCC") August 26, 2019 Motion to Dismiss or, in the Alternative, for Summary Judgment (hereafter, BMHCC's "Motion for Summary Judgment").[1] (ECF No. 45.) Plaintiff Angela Johnson responded on September 17, 2019.[2] (ECF Nos. 46-48.) BMHCC replied on October 8, 2019. (ECF Nos. 57-58.)

---

[1] The Court considers only BMHCC's arguments for summary judgment. The discovery deadline has passed and those arguments are ripe for consideration. (See Am. Sched. Order, ECF No. 31.) The Court need not consider BMHCC's arguments for dismissal under Federal Rule of Civil Procedure 12(b)(6).

[2] Johnson initially failed to attach her supporting Memorandum of Law. She filed it on September 24, 2019. (ECF No. 50.)

The second motion is BMHCC's October 8, 2019 Motion in Limine to Exclude Inadmissible Witness Declarations. (ECF No. 59.) Johnson responded on October 21, 2019. (ECF No. 62.) BMHCC replied on October 30, 2019. (ECF No. 70.)

For the following reasons, the Court GRANTS BMHCC's Motion for Summary Judgment. BMHCC's Motion in Limine is DENIED AS MOOT.

**I. Background**

BMHCC is the parent corporation for a group of related healthcare organizations. (Pl.'s Resp. to Def.'s Statement of Undisputed Facts, ECF No. 47 ¶ 18.) Baptist Memorial Medical Group, Inc. ("BMMG") is a BMHCC subsidiary. (Id.) BMHCC provides BMMG with clinical, financial, legal, and operational support. (Id. ¶¶ 19-20.) BMMG hires its own employees and directs the day-to-day activities of its staff. (Id. ¶ 21.)

Johnson is a former BMMG employee. (Id. ¶¶ 1-2.) She worked for BMMG as a Patient Finance Representative from August 2013 to July 2016. (Id.) Johnson received and signed a copy of BMHCC's Standards of Conduct when she was hired by BMMG. (Def.'s Resp. to Pl.'s Statement of Add'l Disputed Facts, ECF No. 57 ¶ 1.) In September 2015, Johnson emailed Dee Banta, a BMHCC human resources supervisor and alleged that a less qualified BMMG employee had been promoted to a management position instead

of Johnson.  (Id. ¶ 15.)  Banta investigated Johnson's allegation.  (ECF No. 47 ¶ 21.)

On October 28, 2015, Johnson filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission (the "EEOC"), alleging that she had been denied a promotion because of her race.  (Am. Compl., ECF No. 41 ¶ 12.) The October 28, 2015 Charge of Discrimination listed "Baptist Medical Group" as the respondent.  (Id. Ex. 1.)

On July 7, 2016, BMMG terminated Johnson's employment.  (ECF No. 47 ¶ 2.)  Johnson's termination paperwork notified her that "[y]our employment status is being terminated effective immediately" and that "[y]ou will be ineligible for rehire with Baptist Memorial Health Care Corporation."  (Id. ¶ 24; ECF No. 46-12 at 1.)

On July 7, 2016, Johnson filed a second Charge of Discrimination with the EEOC alleging that she had been retaliated against for filing the October 28, 2015 Charge of Discrimination.  (ECF No. 41 ¶ 18.)  The July 7, 2016 Charge of Discrimination listed "Baptist Memorial Healthcare" as the respondent.  (Id. Ex. 3.)

On July 24, 2018, Johnson filed a Complaint against BMHCC alleging race-based discrimination and retaliation in violation of: (1) Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §§ 2000e, et seq.; (2) Section 1981 of the

3

Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981; and (3) the Fourteenth Amendment of the United States Constitution. (ECF No. 1 ¶¶ 23-35.) On July 12, 2019, Johnson filed an Amended Complaint adding BMMG as a defendant. (ECF No. 41.)

BMHCC moves to dismiss or, in the alternative, for summary judgment. (ECF No. 45.) BMHCC moves to exclude two witness declarations attached to Johnson's response to BMHCC's Motion for Summary Judgment. (ECF No. 59.)

## II. Jurisdiction

The Court has federal-question jurisdiction. Under 28 U.S.C. § 1331, United States district courts have original jurisdiction "of all civil actions arising under the Constitution, laws, or treaties of the United States." Johnson alleges that BMHCC violated Title VII, 42 U.S.C. § 1981, and the Fourteenth Amendment of the United States Constitution. Those claims arise under the Constitution and laws of the United States.

## III. Standard of Review

Under Federal Rule of Civil Procedure 56, a court must grant a party's motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party must show that the nonmoving party, having had sufficient opportunity for discovery, lacks

4

evidence to support an essential element of its case. See Fed. R. Civ. P. 56(c)(1); Peeples v. City of Detroit, 891 F.3d 622, 630 (6th Cir. 2018).

When confronted with a properly supported motion for summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine dispute for trial. See Fed. R. Civ. P. 56(c). "A genuine dispute exists when the plaintiff presents significant probative evidence on which a reasonable jury could return a verdict for her." EEOC v. Ford Motor Co., 782 F.3d 753, 760 (6th Cir. 2015) (en banc) (quotation marks omitted). The nonmoving party must do more than simply "'show that there is some metaphysical doubt as to the material facts.'" Lossia v. Flagstar Bancorp, Inc., 895 F.3d 423, 428 (6th Cir. 2018) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)). The nonmovant must identify specific evidence in the record sufficient to establish a genuine issue for trial. See Fed. R. Civ. P. 56(c)(1); Hanson v. Madison Cty. Det. Ctr., 736 F. App'x 521, 527 (6th Cir. 2018).

Although summary judgment must be used carefully, it "is an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action[,] rather than a disfavored procedural shortcut." FDIC v. Jeff Miller Stables, 573 F.3d 289, 294 (6th Cir. 2009) (quotation marks and citations omitted).

**IV. Analysis**

   **A. Motion for Summary Judgment**

BMHCC moves for summary judgment (ECF No. 45) because BMHCC was not Johnson's employer and therefore cannot be liable for employment discrimination under Title VII or 42 U.S.C. § 1981. (ECF No. 45-1 at 6-7.)  BMHCC argues that Johnson's Fourteenth Amendment claim is meritless because BMHCC is not a state actor. (Id. at 2 n.2.)

   **1. Title VII and § 1981 Claims**

"Title VII applies only to 'employers.'"  Sutherland v. Mich. Dep't of Treasury, 344 F.3d 603, 611 (6th Cir. 2003) (quoting 42 U.S.C. § 2000e-2).  The same standard applies to § 1981 claims.  See Rogers v. Henry Ford Health Sys., 897 F.3d 763, 771 (6th Cir. 2018) ("We review claims of alleged race discrimination [and retaliation] brought under § 1981 . . . under the same standards as claims of race discrimination brought under Title VII . . . .") (alteration in original) (quotation marks and citation omitted); Gray v. McDonald's USA, LLC, 874 F. Supp. 2d 743, 749 & n.2 (W.D. Tenn. 2012) (noting that the "[employer] analysis for . . . § 1981 claims is identical to the analysis under Title VII").  "In the absence of disputed material facts or the possibility of conflicting inferences to be drawn from undisputed facts, employment status is a question for the court to resolve as a matter of law."  Sanford v. Main St.

6

Baptist Church Manor, Inc., 449 F. App'x 488, 491 (6th Cir. 2011) (citing Lilley v. BTM Corp., 958 F.2d 746, 750 n.1 (6th Cir. 1992)).

A direct employment relationship is the "usual basis" for Title VII liability. Swallows v. Barnes & Noble Book Stores, Inc., 128 F.3d 990, 992-93 (6th Cir. 1997).[3] However, "courts have fashioned various doctrines by which a defendant that does not directly employ a plaintiff may still be considered an 'employer' . . . ." Id. at 993. In the Sixth Circuit, interrelated companies can be treated as a "single employer" or a "joint employer." Id.; Sanford, 449 F. App'x at 491-92. The "single employer" test considers whether the companies are "highly integrated with respect to ownership and operations." Anwar v. Dow Chem. Co., 876 F.3d 841, 852 (6th Cir. 2017) (quoting Armbruster v. Quinn, 711 F.2d 1332, 1338 (6th Cir. 1983)). The "joint employer" test considers whether the companies "share or co-determine those matters governing essential terms and conditions of employment." EEOC v. Skanska USA Bldg., Inc., 550 F. App'x 253, 256 (6th Cir. 2013) (quoting Carrier Corp. v. NLRB, 768 F.2d 778, 781 (6th Cir. 1985)). "The joint-employer and

---

[3] Swallows addressed claims under the Americans with Disabilities Act ("ADA") and the Age Discrimination in Employment Act ("ADEA"). "Because Title VII, the ADEA, and the ADA define 'employer' essentially the same way," the Court "rel[ies] on case law developed under all three statutes." Swallows, 128 F.3d at 992 n.2 (quotation marks omitted).

7

single-employer doctrines are 'analytically distinct.'" Sanford, 449 F. App'x at 495 (quoting Swallows, 128 F.3d at 993 n.4).

Johnson concedes that BMMG, not BMHCC, was her direct employer. In her Amended Complaint, Johnson submits that she "was hired at [BMMG], a subsidiary of [BMHCC]." (ECF No. 41 ¶ 7.) At her deposition, Johnson testified that she "wasn't working at the Health Care, at the corporate office. I was at BMG." (ECF No. 45-4 at 17:1-7.) Johnson argues that BMHCC can be liable under Title VII as a "joint employer with [BMMG]." (ECF No. 50 at 9.) Johnson does not argue that BMGG and BMHCC were a "single employer." (See generally id.)

A Title VII defendant is a "joint employer" if it "share[s] or co-determine[s] those matters governing essential terms and conditions of employment." Skanska, 550 F. App'x at 256 (quoting Carrier Corp., 768 F.2d at 781). The "major factors" in the "joint employer" analysis are whether the defendant has the ability to: (1) "hire, fire, and discipline"; (2) "affect compensation and benefits"; and (3) "direct and supervise performance." Sanford, 449 F. App'x at 492 (citing Sanford v. Main St. Baptist Church Manor, Inc., 327 F. App'x 587, 595 (6th Cir. 2009)). Other factors in the analysis include "the supervision of the employees' day to day activities[,] . . . promulgation of work rules and conditions of employment, work

8

assignments, and issuance of operating instructions." Turner v. City of Memphis, No. 2:17-cv-2447, 2018 WL 283752, at *5 (W.D. Tenn. Jan. 3, 2018) (quoting NLRB v. Centra, Inc., 954 F.2d 366, 370 n.2 (6th Cir. 1992)).

The arguments in Johnson's summary judgment filings are less than cogent. (See ECF Nos. 47-48, 50.) Many of her assertions have no bearing on the issues relevant to BMHCC's Motion for Summary Judgment. For example, Johnson discusses her qualifications and those of other BMMG employees. (See ECF No. 50 at 6-8; ECF No. 48 ¶¶ 2-6.) Whether Johnson was qualified is relevant to the substantive merits of her Title VII claim. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973) (whether plaintiff "was qualified for [the] job" is an element of a prima facie case of discrimination under Title VII). BMHCC's Motion for Summary Judgment is directed solely to whether BMHCC was Johnson's "employer" under Title VII.

BMHCC attaches an affidavit from BMMG's human resources director stating that "BMMG has and exercises independent authority to hire its own employees, enforce its own policies and rules, and administer its own discipline." (ECF No. 45-3 ¶ 4.) BMHCC attaches an affidavit from BMHCC's human resources director stating that "BMMG[] is responsible for hiring its own employees, managing its own human resources, and directing day-to-day activities of its staff in compliance with its operating

9

policies and procedures." (ECF No. 45-5 ¶ 6.) Both affidavits state that "BMHCC was involved in neither the decision to hire nor to terminate [Johnson]." (ECF No. 45-3 ¶ 9; ECF No. 45-5 ¶ 8.) In response, Johnson cites three facts to support her argument that BMHCC was a joint employer with BMMG: (1) Johnson received and signed a copy of BMHCC's Standards of Conduct when she was hired at BMMG (ECF No. 50 at 6); (2) a BMHCC human resources supervisor investigated Johnson's allegations of discrimination (id. at 7, 9-10); and (3) Johnson's termination paperwork stated that she was "ineligible for rehire with [BMHCC]." (ECF No. 47 ¶ 24).

None of the facts Johnson highlights gives rise to a dispute of material fact about whether BMHCC was a joint employer. First, that Johnson received and signed a copy of BMHCC's Standards of Conduct does not support a finding that BMHCC controlled any aspect of Johnson's hiring, firing, discipline, compensation, benefits, or performance. See Sanford, 449 F. App'x at 492 (describing these as the "major factors" of the "joint employer" analysis). Johnson does not attach a copy of the Standards of Conduct or discuss their terms. BMHCC's issuance of standards of conduct to BMMG employees may relate to two secondary factors in the "joint employer" analysis, the "promulgation of work rules and conditions of employment" and the "issuance of operating instructions." Turner, 2018 WL

283752, at *5 (quoting Centra, Inc., 954 F.2d at 370 n.2). The mere fact that Johnson received a copy of BMHCC's Standards of Conduct does not, without more, show that BMHCC co-determined any of the essential terms and conditions of Johnson's employment. See Taylor v. Colo. State Univ., No. 5:11-cv-00034, 2012 WL 6115596, at *9-11 (W.D. Ky. Dec. 10, 2012) (that a government agency "may have written some safety procedures" for use by state university employees did not "give rise to a joint-employer relationship between the [agency] and [university]," "particularly given that [plaintiff] ha[d] produced no further evidence of these regulations . . .").

Second, the investigation by Dee Banta, a BMHCC human resources supervisor, into Johnson's claims of discrimination by BMMG management suggests that BMHCC oversees or reviews some of BMMG's human resources functions, but does not show that BMHCC co-determined any of the essential terms and conditions of Johnson's employment. Johnson notes that she emailed Banta in September 2015 detailing her discrimination claims and that Banta subsequently investigated those claims and found no wrongdoing by BMMG management. (ECF No. 50 at 6-9.) Johnson argues that, "[s]ince [BMHCC] could investigate race discrimination claims and make recommendations about those complaints, then it should be deemed to be [the] employer of [Johnson] . . . ." (Id. at 9.) The review and investigation of employee discrimination

11

claims is a significant human resources function. Control over or involvement with one or more human resources functions, however, does not equate to an ability to control the complaining employee's essential terms or conditions of employment, i.e., her hiring, firing, discipline, compensation, benefits, or performance. See Towns v. Tenn. Dep't of Agric., No. 17-cv-02603, 2019 WL 2323636, at *5-6 (W.D. Tenn. Feb. 21, 2019), adopted by 2019 WL 1199863 (W.D. Tenn. Mar. 14, 2019) (government agency's ability to direct the training of and audit the performance of Shelby County employees was not "evidence that [agency] hired [Shelby County employee plaintiff] or that it can fire or demote him"); Garlock v. The Ohio Bell Tel. Co. Inc., No. 1:13-cv-2200, 2015 WL 5730665, at *8-9 (N.D. Ohio Sept. 29, 2015) (that an affiliated entity of plaintiff's employer "provided human resources, benefits administration and labor counseling" was not evidence that the affiliated entity "exercised any control over Plaintiff's working conditions, compensation, hiring or firing"); Fall v. MNP Corp., No. 07-cv-10480, 2008 WL 1882669, at *8 (E.D. Mich. Apr. 24, 2008) (that plaintiff "report[ed] to" a supervisor at an affiliated entity of her employer did not demonstrate "whether [the supervisor] had any control over her assignments" and was not "evidence that [the affiliated entity] had the authority to[] hire or fire [plaintiff] . . ."). Johnson offers no evidence that Banta, or

12

any other BMHCC employee, controlled any of the essential terms or conditions of her employment.

Third, that Johnson's termination paperwork stated that "[she] will be ineligible for rehire with [BMHCC]" does not show that BMHCC had any control over, or played any part in, Johnson's termination. BMMG was Johnson's direct employer. (ECF No. 41 ¶ 7.) BMHCC has provided affidavits from BMHCC and BMMG human resources directors stating that BMHCC played no part in Johnson's firing. (See ECF No. 45-3 ¶ 9; ECF No. 45-5 ¶ 8.) A singular mention of BMHCC in Johnson's termination paperwork is not evidence to the contrary. See Phipps v. Accredo Health Grp., Inc., No. 2:15-cv-02101, 2016 WL 3448765, at *9-10 (W.D. Tenn. June 20, 2016) (that "Plaintiff's own notice of separation identified her employer not as [her direct employer] but as [an affiliated entity]" did not "show[] that" the affiliated entity "had the authority to hire, fire, or discipline Plaintiff, or affect her pay and benefits or direct and supervise her job duties").

The isolated facts on which Johnson relies do not raise a genuine dispute of material fact about whether BMHCC "share[d] or co-determine[d]" the "essential terms and conditions of [Johnson's] employment." Skanska, 550 F. App'x at 256. They do not contradict the evidence BMHCC offers demonstrating that BMMG hires its own employees, enforces its own policies and rules,

13

administers its own discipline, directs the day-to-day activities of its staff, and independently determines when and whether to fire its employees. (ECF No. 45-3 at ¶¶ 4, 9; ECF No. 45-5 at ¶¶ 6, 8.) Johnson cites no other facts in the record that could support her argument that BMHCC was a joint employer with BMMG. See In re Morris, 260 F.3d 654, 665 (6th Cir. 2001) (the trial court has no duty to "search the entire record to establish that it is bereft of a genuine issue of material fact").

BMHCC has met its burden of establishing that there is no genuine dispute of material fact about whether BMHCC was Johnson's joint employer. Johnson fails to offer competent, countervailing evidence in response. Summary judgment as to Johnson's Title VII and § 1981 claims is appropriate.

## 2. Fourteenth Amendment Claim

Addressing Johnson's Fourteenth Amendment claim, BMHCC argues that "the Fourteenth Amendment prohibits discrimination by governmental entities, not by private parties, such as [BMHCC]." (ECF No. 45-1 at 2 n.2.) BMHCC's argument is well-taken. "[T]he Fourteenth Amendment, by its very terms, prohibits only state action. . . . '[It] erects no shield against merely private conduct, however discriminatory or wrongful.'" United States v. Morrison, 529 U.S. 598, 621 (2000) (quoting Shelley v. Kraemer, 334 U.S. 1, 13 (1948)). In her response to BMHCC's

14

Motion for Summary Judgment, Johnson does not discuss her Fourteenth Amendment claim and does not assert that BMHCC is a state actor, much less establish a genuine dispute of material fact about whether BMHCC is a state actor. (See generally ECF No. 50.) Summary judgment is appropriate on Johnson's Fourteenth Amendment claim.

**B. Motion in Limine**

BMHCC moves to exclude two witness declarations attached to Johnson's response to BMHCC's Motion for Summary Judgment. (ECF No. 59.) Because the Court grants BMHCC's Motion for Summary Judgment, it DENIES AS MOOT BMHCC's Motion in Limine.

**V. Conclusion**

For the foregoing reasons, BMHCC's Motion for Summary Judgment is GRANTED. BMHCC's Motion in Limine is DENIED AS MOOT.


So ordered this 19th day of December, 2019.

                    /s/ *Samuel H. Mays, Jr.*
                    Samuel H. Mays, Jr.
                    UNITED STATES DISTRICT JUDGE